## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| J.B.O., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | **7:22-CV-93 (TQL)** |
| | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

### ORDER

Plaintiff filed this Social Security appeal on September 8, 2022, challenging the Commissioner's final decision denying his disability application, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Both parties consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to, ordering the entry of judgment. (Doc. 9; Clerk's Entry, Sept. 15, 2022). The parties may appeal from the judgment, as permitted by law, directly to the United States Court of Appeals for the Eleventh Circuit. 28 U.S.C. § 636(c)(3).  Jurisdiction arises under 42 U.S.C. §§ 405(g) and 1383(c). All administrative remedies have been exhausted.

### *Legal Standard*

In reviewing the final decision of the Commissioner, the Court must evaluate whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards to the evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, which is defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Brito v. Comm'r, Soc. Sec.*

*Admin.*, 687 F. App'x 801, 803 (11th Cir. 2017) (per curiam) (first citing *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); and then quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citations omitted).

"Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "In contrast, the [Commissioner's] conclusions of law are not presumed valid. The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-46 (citations omitted).

Under the Regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits his or her ability to carry out basic work activities. Third, the Commissioner evaluates whether the claimant's impairments meet or equal listed impairments in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity (RFC) will allow a return to past relevant work. Finally, the Commissioner determines whether the claimant's RFC, age, education, and work experience allow for an adjustment to other work.

### Administrative Proceedings

Plaintiff filed applications for Disability Insurance Benefits and for Supplemental Security Income on August 7, 2018. (Tr. 16, 297, 303). In his applications, Plaintiff alleged an initial onset

date of July 29, 2018. (Tr. 16, 297, 303). The Social Security Administration denied Plaintiff's claims initially and upon reconsideration. (Tr. 16, 179, 183, 190, 194). Plaintiff requested a hearing (Tr. 199) and appeared before an Administrative Law Judge (ALJ) on March 2, 2020, and again on May 10, 2021 (Tr. 16, 63, 96).

In a hearing decision dated March 17, 2022, the ALJ determined Plaintiff was not disabled. (Tr. 16-30). The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of review. (Tr. 6-8).

***Statement of Facts and Evidence***

Plaintiff was born on October 16, 1979 (Tr. 28, 297, 303), and was thirty-eight (38) years old at the time of the alleged onset of disability (Tr. 28). The ALJ found that Plaintiff had past relevant work experience as a warehouse worker, a material handler, a laundry operator, a kitchen helper, and a janitor. (Tr. 27).

The ALJ determined that Plaintiff suffered from the following severe impairments: obesity, hypertension, depressed mood, post-traumatic stress disorder, low vision, degenerative disc disease, and mild contractures of burn scarring from 31.5% total body surface area ("TBSA") in 2018. (Tr. 19). The ALJ found that Plaintiff suffered from non-severe impairments including corneal scarring and eyelid injury. (Tr. 19-20). The ALJ also found that Plaintiff's MRSA, mild hypothyroidism, acute vitamin deficiencies, high cholesterol, respiratory failure, dental disease, and sinusitis all resolved or remained stable with basic conservative care. (Tr. 19). The ALJ found that the evidence showed that Plaintiff did not have medically determinable neuropathy. (Tr. 20).

Considering the "paragraph B" criteria, the ALJ found that Plaintiff had a mild limitation in his ability to understand, remember, or apply information; a moderate limitation in his ability to interact with others; a moderate limitation in his ability to concentrate, persist, or maintain pace;

and a mild limitation in his ability to adapt or manage himself. (Tr. 21-23). Because the ALJ found that Plaintiff's mental impairments did not cause at least two (2) "marked" limitations or one (1) "extreme" limitation, the ALJ found that the "paragraph B" criteria were not satisfied. (Tr. 23). The ALJ found that the evidence failed to establish the presence of the "paragraph C" criteria. *Id.*

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the level of severity contemplated in the listings. (Tr. 20).

Considering the entire record, the ALJ determined that Plaintiff had the RFC to perform light work, except that he could lift/carry twenty (20) pounds occasionally and ten (10) pounds frequently; could stand/walk six (6) hours and sit six (6) hours per day; could occasionally climb ramps/stairs and never climb ladders, ropes, and scaffolds or have similar hazard exposure (due to obesity and low vision); could occasionally balance, stoop, kneel, crouch, and crawl; could frequently use his upper extremities for such as pushing/pulling or operating controls (due to obesity and disc disease); could occasionally reach overhead; his vision was adequate to maneuver about the workplace and avoid ordinary hazards though he has no depth perception; could have occasional atmospheric exposure to such as dust or smoke; could never have exposure to extreme heat; and could sustain simple tasks but not tandem team tasks. (Tr. 23).

The ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 27). Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 28-29).

Ultimately, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from July 29, 2018, through March 17, 2022, the date of the ALJ's decision. (Tr. 29-30).

**DISCUSSION**

Plaintiff makes three (3) broad arguments alleging reversible error. First, that the ALJ failed to account for Plaintiff's use of a wheelchair when assessing Plaintiff's RFC. Second, that the physical RFC is not supported by substantial evidence. Third, that the mental RFC is not supported by substantial evidence. Plaintiff also appears to make arguments in the conclusion of his Brief, which the Court addresses separately. (Doc. 14).

I. RFC: Wheelchair Limitations

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC because, despite acknowledging Plaintiff's use of a wheelchair, the ALJ did not include wheelchair-related limitations in the RFC, which RFC assumes standing/walking for six (6) hours per day. *Id.* at 3. In support thereof, Plaintiff argues that his wheelchair is medically necessary and that the ALJ did not reasonably find to the contrary. *Id.* at 4.

The issue of whether an assistive device is "'medically necessary' . . . is not dispositive." *Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 895 (11th Cir. 2010) (per curiam) (discussing SSR 96-9p). In *Baker*, the Eleventh Circuit considered whether a medically required hand-held assistive device – a cane – was permissible in the context of an RFC which assessed the ability to perform sedentary work. While the ALJ in *Baker* did mention that the claimant required a cane for ambulation but was able to walk effectively with it, the ALJ did not make any findings on the effects of the cane on the claimant's "balancing, prolonged versus brief ambulation, standing, lifting and carrying with one hand, balancing on level terrain, and stooping." *Id.* The Eleventh Circuit found that the assessed RFC was nonetheless supported by substantial evidence. *Id.* at 896.

SSR 96-9p, the Social Security Ruling on which Plaintiff primarily relies, addresses the implications of a RFC for less than a full range of sedentary work. SSR 96-9p, 1996 WL 374185. As to medically required hand-held assistive devices, SSR 96-9p states that to

> find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

*Id.* at *7.

As an initial matter, it does not appear that SSR 96-9p is applicable in this case. SSR 96-9p applies to sedentary work and to hand-held devices, whereas Plaintiff is assessed for light work and a wheelchair is not a hand-held device. However, because a wheelchair could affect Plaintiff's limitations, the Court continues its analysis.

On February 18, 2020, Dr. Graham performed a face-to-face mobility examination for a motorized wheelchair. (Tr. 2234). Dr. Graham stated that Plaintiff needed a motorized wheelchair due to weakness and debility, that Plaintiff was at a high risk for falling, that he uses a four (4) post cane at all times when up, and that he can only ambulate five (5) feet or less before becoming dizzy and unsteady on his feet, but that Plaintiff has minimal postural stability problems while sitting. *Id.* Dr. Graham's physical exam shows that Plaintiff had weakness to bilateral arms and legs, with upper extremities having muscle strength of 3-4/5 bilaterally, and lower extremities having muscle strength of 3-4/5 bilaterally. (Tr. 2236). No other documentation was provided as to the face-to-face mobility examination. Thereafter, Dr. Graham provided Plaintiff with a prescription for a motorized wheelchair. (*See, e.g.*, Tr. 2309).

The ALJ considered Dr. Graham's "support[]" for Plaintiff's "desire for a 'motorized power wheelchair[,]'" and found that the evidence did not support the alleged limitations. (Tr. 25-

26). The ALJ noted that Dr. Graham did not fully test the body systems involved. (Tr. 25). Notably, the ALJ ordered a consultative electromyography ("EMG") and nerve conduction study in January 2022, which returned normal results, with the consultative examiner stating that Plaintiff gave an incomplete effort in the EMG portion of the test. *Id.* The ALJ further noted that Plaintiff was observed with a "steady gait" long after the alleged onset of disability, and Plaintiff's medical review of systems forms did not consistently mention any ambulation difficulties even as Plaintiff was being evaluated for possible paresthesia and given a trial medication with a referral to neurology. (Tr. 25-26). Ultimately, the ALJ found that Plaintiff's allegation of complete inability to ambulate lacked confirming evidence in the exam, treatment, and evaluation record from the period under consideration. (Tr. 27).

The ALJ also questioned Plaintiff about his alleged need for a wheelchair during both hearings. At the March 2020 hearing, when asked to be "real clear" why he was prescribed a wheelchair, Plaintiff stated that his "legs get weak" and he starts "feeling numbness" and "a lot of times" he falls and his "equilibrium is off." (Tr. 105). At the May 2021 hearing, the ALJ specifically asked "when, sir, did it change from can't walk far to can't walk almost any? What year was that[?]" (Tr. 74). Plaintiff replied that he could not remember and was not able to "put a year on it." (Tr. 75). Plaintiff testified that he gets "real weak," or he "numb[s] up . . . to the point that" he "can't even feel [his] legs." *Id.*

The medical evidence shows that Plaintiff sustained burns from a car fire on July 29, 2018. (Tr. 528). The initial estimate of the burns to Plaintiff's TBSA was 4.5% of his face, 9% of his neck and chest, 5% of his abdomen, 7% of his right upper extremity, 3% of his left upper extremity, 1% of his right lower extremity, and 2% of his back, for an initial estimate of 23.5% of his TBSA. (Tr. 530-31). Plaintiff's revised TBSA was approximately 31.5%. (Tr. 724).

Plaintiff underwent numerous burn related procedures. (*See, generally*, Tr. 515-1466). By October 6, 2018, Plaintiff was walking daily. (Tr. 1702). On October 10, 2018, Plaintiff was walking multiple laps around the unit and was cleared for discharge. (Tr. 1686-87). On October 11, 2018, Plaintiff worked with occupational therapy, and was out of bed in a wheelchair. (Tr. 1939). On November 6, 2018, Plaintiff required a wheelchair, and his discharge potential was good with continued therapy. (Tr. 1912).

During a behavioral health appointment on June 10, 2019, Plaintiff reported that he sometimes thought about "walking out in front of a car to end it all." (Tr. 2318). His gait was steady, and Plaintiff had no musculoskeletal complaints. (Tr. 2320, 2322). At no time during his behavioral health treatment did Plaintiff complain of musculoskeletal issues. (*See, e.g.*, Tr. 2328 (June 21, 2019), 2340 (Aug. 6, 2019), 2370 (July 15, 2020), 2383 (Nov. 16, 2020)). On most occasions, Plaintiff was observed with a steady gait. (*See, e.g.*, Tr. 2320 (June 26, 2019), 2344 (Sept. 12, 2019), 2350 (Oct. 9, 2019), 2356 (Dec. 17, 2019), 2362 (Jan. 28, 2020)).

On February 25, 2021, at Tift Regional, Plaintiff was examined in his wheelchair, but he did not complain of weakness in his arms or legs. (Tr. 2528, 2533-34). On April 12, 2021, Plaintiff was examined for shortness of breath and did not complain of weakness in his arms or legs, he had normal range of motion in his musculoskeletal system, and there was no mention of a wheelchair, but Plaintiff was described as a fall risk. (Tr. 2557, 2559-60, 2566). Finally, on January 26, 2022, the EMG study revealed normal results with the examiner noting that Plaintiff put forth an incomplete effort. (Tr. 2588).

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff did not require the use of a wheelchair for several reasons. First, the evidence shows that Plaintiff

was able to ambulate both shortly after he sustained his traumatic burn injuries and after he allegedly began requiring the use of a motorized wheelchair.

Second, Dr. Graham did not include any evidence of test results that would support his determination that Plaintiff required a wheelchair. Under the regulations that apply to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, an ALJ is required to consider "supporting explanations presented by a medical source," and whether the opinion is consistent 'with the evidence from other medical sources"; where a medical opinion is unsupported or inconsistent, an ALJ may find that opinion less persuasive. *Id.* §§ 404.1520c(c)(1) and (c)(2), 416.920c(c)(1) and (c)(2). The ALJ appropriately articulated reasons for finding that Dr. Graham's opinion was not supported by, or consistent with, the record.

Finally, the ALJ articulated reasons supported by substantial evidence in finding that Plaintiff's allegations of his total inability to ambulate lacked confirming evidence in the exam, treatment, and evaluation record. *Baker*, 384 F. App'x at 896 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)) ("We recognize that credibility determinations are the province of the ALJ.").

While there is some evidence in the record to support Plaintiff's claims, the issue before the Court "is whether there was substantial evidence to support the [ALJ's] decision, not whether there could be substantial evidence in the record to support a different decision." *Rodriguez ex rel. R.C. v. Berryhill*, 2021 WL 5023951 at *7 (11th Cir. 2021) (citing *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1282 (11th Cir. 2004)). "Under a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports [his] position;

[he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citation omitted). Accordingly, the Court finds that the ALJ's determination that Plaintiff's RFC did not require a wheelchair limitation is supported by substantial evidence. *Wright v. Colvin*, 2014 WL 5591058 at *5 (S.D. Ga. 2014) (finding that the ALJ adequately provided reasons for rejecting the claimant's need for a cane as required by SSR 96-9p).

   II. <u>Physical RFC</u>

   In support of his argument that the physical RFC is not supported by substantial evidence, Plaintiff makes two arguments. First, that the ALJ erroneously discredited Dr. Kothari's consultative examination. Second, that the ALJ erroneously discounted Plaintiff's subjective allegations. (Doc. 14, pp. 6-14).

   As to Dr. Kothari's consultative examination, when considering medical opinions under the regulations applicable to Plaintiff's claims, an ALJ is required to articulate how he considered the medical opinions and how persuasive he found them. *See Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144 at *4 (11th Cir. 2022) (per curiam) (explaining the new regulations). An ALJ is required to explain how he considered the "supportability" and the "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). An ALJ may, but is not required to, articulate consideration of other factors related to that medical source's opinion. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Matos*, 2022 WL 97144 at *4 (citing 20 C.F.R. § 404.1520c(b)(2)). Additionally, an ALJ will not defer or give specific evidentiary weight, including controlling weight, to any medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

   Here, the ALJ complied with the regulations by articulating his consideration of the "supportability" and the "consistency" of Dr. Kothari's opinion. First, the ALJ highlighted that Dr.

Kothari noted that Plaintiff was "wheelchair bound" without linking his conclusion to other required evidence. (Tr. 25). Then, the ALJ noted "several other issues" with Dr. Kothari's opinion. *Id.* As to one of those issues, the ALJ found that Dr. Kothari's opinion did not conform to the rules governing consultative examination report contents. *Id.*

Under those rules, a consultative examiner must, among other things, "specify any limitations in functioning that result from the condition(s) or disorder(s)," including lifting, carrying, pushing, pulling, sitting, standing, walking, postural limitations, fine or gross motor skills, reaching, vision, hearing, and speech, and others. POMS DI 22510.100, General Guidelines for Adult Physical Consultative Examination Report Content, https://secure.ssa.gov/poms.nsf/lnx/0422510100 (last accessed Apr. 3, 2023); *see also* Tr. 25.

In this case, as the ALJ correctly noted, Dr. Kothari simply gave his diagnoses, without addressing the relevant limitations as to the required activities. For example, in the section for describing movement, in response to the question regarding whether an assistive device is required for ambulation, which question specifically states that the examiner must give the medical basis for its use and that the examiner should examine the claimant both with and without the device, and indicate if the claimant was examined only without the device and the reason therefore, Dr. Kothari wrote "wheel chair bound" without explanation. (Tr. 2392). As a result, the ALJ properly noted that Dr. Kothari did not comply with the rules governing consultative examination reports, and the ALJ was entitled to find Dr. Kothari's report less persuasive on that basis.

The ALJ also found that Dr. Kothari's report was vague and inconsistent with the longitudinal treatment record, and that Dr. Kothari's diagnosis of critical illness neuropathy was an outlier, as no other treating source had made such a diagnosis. (Tr. 25). Having reviewed the

11

medical evidence, the Court finds that the ALJ was entitled to discount Dr. Kothari's report because it was vague and inconsistent with the medical evidence.

As to Plaintiff's subjective allegations, in the Eleventh Circuit,

> [i]n order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If a claimant testifies about his subjective complaints of disabling pain and other symptoms, and the ALJ chooses to discredit the claimant's complaints of pain, the ALJ "must articulate explicit and adequate reasons." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (first citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); and then citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 26). In making this finding, the ALJ limited Plaintiff to light work with additional postural, visual, manipulative, environmental, and psychological limitations. (Tr. 27).

The Court finds that the ALJ properly applied the pain standard for several reasons. Most fundamentally, the ALJ did not find that Plaintiff was in no pain. Rather, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (Tr. 26). The ALJ also did not completely reject Plaintiff's claims of pain related to his

12

medically determinable impairments. Rather, the ALJ found that Plaintiff's claims related to his medically determinable impairments warranted limitations to his RFC, as discussed, *supra*. (Tr. 23, 27). "Put differently, [the ALJ] discounted [Plaintiff's] subjective testimony regarding the <u>extent</u> of [his] symptoms" and their effect on his RFC, "but [he] did not find that [Plaintiff] was not in any pain" or have no symptoms at all. *Henderson v. Berryhill*, 2019 WL 1179426 at *4 (S.D. Ga. 2019).

Further, the ALJ articulated explicit and adequate reasons for discounting Plaintiff's subjective complaints of his allegedly disabling pain. *Hale*, 831 F.2d at 1011. Finally, the ALJ's credibility determination was sufficient for the Court to conclude that the ALJ considered Plaintiff's condition as a whole. *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014) (per curiam) (citing *Dyer v. [Barnhart]*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam)).[1]

The ALJ's decision to discount Plaintiff's subjective testimony regarding the extent of his symptoms and their effect on his RFC is also supported by substantial evidence. As discussed, *supra*, the evidence shows that Plaintiff was able to ambulate both shortly after he sustained his traumatic burn injuries and after he allegedly began requiring the use of a motorized wheelchair. Further, EMG testing showed normal results and that Plaintiff did not put forth a complete effort. While there is some evidence in the record to support Plaintiff's allegations, the issue before the Court is whether there is substantial evidence to support the ALJ's decision, not whether there could be substantial evidence to support a different decision. *Rodriguez ex rel. R.C.*, 2021 WL

---

[1] The *Newberry* opinion, as originally issued by the Eleventh Circuit, erroneously cites to *Dyer v. Barnhard* in its initial citation to *Dyer*. The correct citation is *Dyer v. Barnhart*. The Westlaw and Lexis publications of the *Newberry* opinion retain this citation error, so the Court notes the correction in the text above.

5023951 at *7 (citing *Shinn ex rel. Shinn*, 391 F.3d at 1282). Accordingly, the Court finds that the ALJ's decision to discount Plaintiff's subjective allegations is supported by substantial evidence.

 III. <u>Mental RFC</u>

 In support of his argument that the mental RFC is not supported by substantial evidence, Plaintiff makes two arguments. First, that the ALJ failed to give a basis for finding the mental opinions unpersuasive. Second, that the ALJ erroneously discounted Plaintiff's subjective allegations. (Doc. 14, pp. 14-17).

 As to the ALJ's discrediting of the mental opinions, as noted, *supra*, an ALJ is not required to defer to, or give controlling weight to, a medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ is, however, required to articulate his consideration of the "supportability" and the "consistency" of the medical opinions. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

 Here, the ALJ found that the mental opinions finding "marked" and "extreme" limitations lacked consistency with the contemporaneous treatment record from the providers' own notes and other medical evidence. (Tr. 22). The ALJ then cited other evidence in the record that contradicted or rebutted the mental opinions' findings. (Tr. 22, 26). In so doing, the ALJ impliedly found that the mental opinions were unsupported by the record. "The ALJ may not have used the word 'supportability,' but he discussed the record with respect to the inconsistency of the opinions within the physician's own records, and the Court finds that to be adequate." *Frye v. Comm'r of Soc. Sec.*, 2022 WL 1045719 at *5 (M.D. Fla. 2022) (citations omitted) (discussing harmless error for the ALJ's failure to say "supportability"). Having reviewed all the evidence in the record, the Court finds that the ALJ was entitled to discredit the mental opinions.

 The ALJ's decision to discredit the mental opinions is also supported by substantial evidence. Beginning on June 10, 2019, Plaintiff reported that he was experiencing depression,

anxiety, nightmares, and having suicidal ideation, and that he was only sleeping about three (3) to five (5) hours a night. (Tr. 2318-19). During follow up treatment, Plaintiff reported that his depression was improving, though he was still having some anxiety, and he was sleeping a little better. (Tr. 2331). Plaintiff continued to improve over several treatment sessions. (Tr. 2337-38, 2343-44). On December 17, 2019, Plaintiff denied any prominent depression, anxiety, or active suicidal ideation. (Tr. 2355). Over the next year, Plaintiff reported that he was doing ok and a little better, but he reported depression on November 9, 2020. (Tr. 2367-68, 2373, 2379). Accordingly, the Court finds that the ALJ's decision to discredit the mental opinions is supported by substantial evidence.

As to Plaintiff's subjective allegations, the Court finds that the ALJ was entitled to discount Plaintiff's allegations for several reasons. First, the ALJ did not find that Plaintiff had <u>no</u> mental impairments. Rather, the ALJ found that Plaintiff's depressed mood and post-traumatic stress disorder were severe impairments. (Tr. 19). As such, the ALJ found that those severe impairments warranted limitations. (Tr. 22-23).

Second, while it is true, as Plaintiff asserts (Doc. 14, p. 16 n.19), that Plaintiff experienced and expressed depression, anxiety, and other mental symptoms, the evidence also shows that Plaintiff reported at other times that he had no depression, anxiety, or suicidal ideation, and that he was doing well, as discussed, *supra*. The issue before the Court is whether the ALJ's decision is supported by substantial evidence, not whether there could be substantial evidence to support another decision. Accordingly, the Court finds that the ALJ's decision to discount Plaintiff's subjective allegations is supported by substantial evidence.

IV. <u>Concluding Arguments</u>

Plaintiff appears to make several separate, additional arguments in the conclusion of his Brief. To the extent that the Court previously addressed these arguments, the Court does not provide any additional analysis or discussion. To the extent that Plaintiff makes said arguments without reference to the record, the Court does not consider said arguments. The Court addresses the remaining separate, additional arguments as follows:

Plaintiff asserts that the ALJ failed to consider the record evidence that supports Plaintiff's claims. (Doc. 14, p. 17). As discussed, *supra*, the Court found that the ALJ properly considered the record evidence. That a different conclusion is possible is not the issue before the Court. The issue before the Court is whether the ALJ's decision is supported by substantial evidence. The Court concludes that it is.

Plaintiff asserts that the ALJ relied on a lack of treatment for some of Plaintiff's impairments, but asserts that Plaintiff is unable to afford treatment, which excuses Plaintiff's lack of treatment. *Id.* at 18. The Court finds this argument unpersuasive for several reasons. First, Plaintiff fails to cite the record in support of his argument. Second, the ALJ expressly noted that Plaintiff was receiving indigent care. (Tr. 22, 27).

Third, as the ALJ noted, Plaintiff's alleged mental impairments were known throughout the relevant period, and there was sufficient evidence in the record for the ALJ to make an informed decision. Where there are no "evidentiary gaps that result[] in unfairness or clear prejudice[,]" an ALJ is not required to order a consultative examination. *Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016) (per curiam) (first citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); and then citing *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007)). Plaintiff does not assert a new previously unexamined condition that would affect his RFC, "so a consultative exam would have been for the same condition that had been examined several times

since the inception of this case." *Id.* at 870. Further, the ALJ ordered three (3) consultative examinations to complete the record. (Tr. 22, 27).

Finally, the ALJ found that Plaintiff's depression and post-traumatic stress disorder were severe impairments. Plaintiff "may be correct that additional consultative exams may have been somewhat helpful, but he ultimately bears the burden of showing that he is disabled." *Colon*, 660 F. App'x at 870 (citing *Ellison v. Barnhart*, [355] F.3d 1272, 1276 (11th Cir. 2003)).[2] Because the ALJ accounted for Plaintiff's severe impairments, Plaintiff "cannot show any evidentiary gaps that would result in prejudice and require a remand." *Id.* at 870-71.

Plaintiff also asserts that the ALJ was required to consider Plaintiff's twenty-one (21) year work history in compliance with 20 C.F.R. § 404.1529(c)(3) and SSR 16-3p. (Doc. 14, p. 19). The ALJ explicitly stated that he complied with the requirements of § 404.1529 and SSR 16-3p. (Tr. 23). Plaintiff presents no evidence to suggest that the ALJ failed to comply with those provisions. Accordingly, the Court finds that Plaintiff's argument is without merit.

## CONCLUSION

As the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence, the Commissioner's decision is **AFFIRMED** pursuant to Sentence Four of § 405(g).

**SO ORDERED**, this 10th day of April, 2023.

s/ ***THOMAS Q. LANGSTAFF***
UNITED STATES MAGISTRATE JUDGE

---

[2] The *Colon* opinion, as originally issued by the Eleventh Circuit, erroneously cites to *Ellison*, 335 F.3d at 1276, as to the quoted text. The correct citation is *Ellison*, 355 F.3d at 1276. Westlaw's version of the *Colon* opinion retains this citation error, so the Court notes the correction in the text above. The Lexis publication of the *Colon* opinion omits the error and corrects it, without indicating a text alteration.